E-FILED
Monday, 04 August, 2025 08:42:09 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| YURI SMITH,<br><br>Plaintiff,<br><br>v.<br><br>CATERPILLAR, INC. dba CATERPILLAR LOGISTICS SERVICES, LLC,<br><br>Defendant. | ) | Case No. 2:24-cv-2216 |

## SECOND AMENDED COMPLAINT

Plaintiff Yuri Smith, by and through her attorneys, Carla D. Aikens, P.L.C, submit the following Amended Complaint against Defendant Caterpillar, Inc. dba Caterpillar Logistics Services, LLC.

## JURY DEMAND

COMES NOW Plaintiff Yuri Smith and hereby demands trial by jury.

## JURISDICTION

1. At all relevant times to this complaint, Plaintiff Yuri Smith was a resident of Vermilion County in the State of Illinois.

2. Defendant Caterpillar, Inc. dba Caterpillar Logistics Services, LLC, is, upon information and belief, a foreign for-profit corporation that maintains a place of business at 102 S Duncan Road, Champaign, Illinois.

3. The amount in controversy is over $75,000.

## VENUE

4. Venue is proper in this court because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this county.

**FACTUAL ALLEGATIONS**

1. Plaintiff Yuri Smith ("Plaintiff") is an African-American man who was employed by Defendant and lost the permanent use of one of his fingers after Defendant did nothing to prevent him from being attacked by a former employee.

2. Upon information and belief, Tammy Nettles was Defendant's Human Resources ("HR") Director at all times relevant to this Complaint.

3. Plaintiff worked for Defendant and was in good standing with the Defendant prior to the events in this Complaint, until he was unlawfully terminated.

4. When Plaintiff worked there, a white couple who worked for Defendant would have altercations at work and nothing was done.

5. Plaintiff was informed that people who were in a relationship were not permitted to work together, but the white couple was allowed to work together without issue.

6. While Plaintiff worked there, white employees were allowed to do things such as leave early, whereas Black employees were not permitted to do that.

7. Further, Defendant would discipline and/or terminate Black employees more often than white employees, and often discipline and/or terminate Black employees for minor and/or made-up reasons.

8. In addition, "random" drug tests were given disproportionately to Black employees, including Plaintiff, whereas white employees were not tested in the entire time that Plaintiff worked for Defendant.

9. White supervisors and team leads, including one by the name of "Ashley," would talk to Black employees harshly and order them to do undesirable jobs, and white employees were not spoken to nor ordered around in the same manner.

10. Black employees of Defendant were placed on harder and/or less desirable jobs.

11. Further, Ashley would allow white employees to move who expressed a desire not to be assigned to a certain station.

12. In contrast, if Black employees were assigned to a job that they did not want to do, Ashley would send the Black employees home early and tell them to clock out, and they were not allowed to move to another location.

13. Plaintiff tried to avoid her and stay out of Ashley's way after these incidents occurred.

14. On or about June 7, 2022, a woman confronted Plaintiff with a threat to get her significant other to "handle" Mr. Smith.

15. Upon information and belief, the significant other of the employee had also worked for Defendant and was terminated just shortly before the attack on Plaintiff.

16. Upon information and belief, the significant other and the employee had a history of harassing and bullying Defendant's Black employees on the premises, and Defendant did nothing about it.

17. Mr. Smith reported the information to his and the significant other's boss (whom Plaintiff believes was named "Mike") due to feeling threatened and afraid for his life.

18. Mike did not care at all that Plaintiff's life had been threatened, even though Plaintiff told him that the female employee said she was going to send someone outside to wait for Plaintiff.

19. Mike told Plaintiff to call a ride and leave work early, which Plaintiff did by contacting his girlfriend who came to pick him up.

20. Another person witnessed the threat and reported the incident, as well.

21. As Plaintiff was leaving work that day, the employee's significant other appeared at the job location where Mr. Smith worked and followed Mr. Smith to his car, stating that he just wanted to talk.

22. As Mr. Smith approached his car where his girlfriend was waiting for him, he was attacked by the significant other without provocation or warning.

23. The significant other brandished a knife and attempted to harm Mr. Smith while on the premises of Defendant, in the parking lot, including biting him on the hand several times.

24. The significant other also tried to attack Mr. Smith's girlfriend, who defended herself with a baseball bat.

25. Mr. Smith tried to defend himself and his girlfriend from the attack by the significant other.

26. While Plaintiff's supervisor Mike stood by and watched, Defendant's hourly employees from the first shift broke up the attack in which the significant other continued biting Plaintiff's finger in an attempt to sever it.

27. Upon information and belief, Defendant also employed security guards at the location where this altercation occurred.

28. No supervisor, team lead, or other agent of Defendant nor any of the hired security guards attempted to intervene or break up the fight in which Mr. Smith was attacked with deadly weapons.

29. Upon information and belief, a supervisor came out and did not attempt to intervene choosing to observe/record Mr. Smith fighting for his life.

30. Upon information and belief, Defendant treated Black employees worse than white employees, which included not intervening when there were issues between Black employees.

31. This included Defendant's failure to intervene to help Plaintiff after he reported the threats and while he was being physically attacked.

32. Plaintiff was permanently injured in the attack.

33. As of this filing, Plaintiff still has no feeling in the affected finger, and still cannot close his hand fully, which further affects his ability to work and lift heavy objects.

34. One day after the attack, Mr. Smith was called on his cell phone stating he was terminated after "investigation" into the attack on Mr. Smith, because Defendant claimed he had hit the man who attacked him, even though he was defending himself from having his finger severed, did nothing wrong, and did not provoke the attack.

35. Mr. Smith was not interviewed nor spoken to at all after being attacked, and Defendant did not follow its own policies related to handling of workplace violence matters, as it did nothing to protect him.

36. This treatment and termination reflects Mr. Smith's observations of working for Defendant.

37. Upon information and belief, other African-Americans have been treated similarly by management in receiving disparate treatment when compared to their white co-workers.

38. More specifically, upon information and belief, white employees for Defendant have: 1) participated in altercations; 2) not been disciplined and/or terminated; and 3) have had Defendant's agents intervene to help them when there was a threat of harm or altercation.

39. Upon information and belief, the attack resulted in the following physical injuries to Mr. Smith:

a. Open wound of right hand due to bite;

b. Flexor tenosynovitis of finger;

c. Suppurative tenosynovitis of flexor tendon of right hand;

d. Other bites and abrasions;

e. Potential infection;

40. Mr. Smith reported the danger to a manager or other person with the ability to take action affecting Mr. Smith's day-to-day work.

41. Mr. Smith submits that Plaintiff fired him due to his race, his reporting of conduct in the days leading up to the attack, and further, in anticipation of him filing a lawsuit for his injuries and making a claim for workers' compensation for the workplace violence that Defendant was aware of and did nothing to prevent, because his report was not taken seriously.

42. Due to the actions or lack thereof of Defendant, Plaintiff filed his charge with the EEOC, was issued a Right to Sue letter on August 21, 2023, and this lawsuit follows.

## COUNT I
## HARRASMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")

43. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

44. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

45. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's skin color.

46. A respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

47. Moreover, a respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting all Plaintiffs and the authority to direct those Plaintiffs' daily work activities, as alleged in the statement of facts.

48. Plaintiff is an African-American man, and, as a result, is a member of a protected class pursuant to Title VII.

49. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as set forth in the facts section above, including but not limited to talking down to Plaintiff and other Black employees and putting them on less desirable and/or physically demanding jobs, being "randomly" drug-tested, not taking his reports of harm seriously, being immediately fired without investigation, and terminating him even though he did not do anything but defend himself from an attack, which were not how white employees were or had been treated by Defendant.

50. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

51. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts, and he suffered several adverse actions up through termination.

52. More specifically, Defendant permitted Plaintiff to be spoken down to, mistreated, placed on harder/undesirable stations, attacked, and eventually terminated because of his race.

53. Plaintiff was subjected to the above adverse actions due to his race, as a member of a protected class.

54. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

## COUNT II
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACTS ("IHRA")

55. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

56. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the Illinois Human Rights Act, 775 ILCS 5 et seq.

57. Defendant's conduct, as alleged herein, violated the Illinois Human Rights Act, 775 ILCS 5 et seq, which makes it unlawful to discriminate against an employee because of their race.

58. A respondeat superior relationship existed because Defendant's managers and supervisor had the ability to undertake or recommend tangible decisions affecting Plaintiff, and the authority to direct Plaintiff's daily work activity.

59. Plaintiff's race is African American, and as such is a member of a protected class.

60. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as set forth in the facts section above, including but not limited to talking down to Plaintiff and other Black employees and putting them on less desirable and/or physically demanding jobs, being "randomly" drug-tested, not taking his reports of harm seriously, being immediately fired without investigation, and terminating him even though he did

not do anything but defend himself from an attack, which were not how white employees were or had been treated by Defendant.

61. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

62. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts, and he suffered several adverse actions up through termination.

63. More specifically, Defendant permitted Plaintiff to be spoken down to, mistreated, placed on harder/undesirable stations, attacked, and eventually terminated because of his race.

64. Plaintiff was subjected to the above adverse actions due to his race, as a member of a protected class.

65. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

66. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

59. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

60. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

61. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

62. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

63. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff reported the threat of being harmed by the female employee and her significant other.

64. Plaintiff held a reasonable belief that his complaint was protected activity under Title VII.

65. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to Defendant's agents.

66. Because Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, and terminated his position.

67. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

68. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

69. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

70. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT IV**
**RETALIATION IN VIOLATION OF IHRA**

71. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

72. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the Illinois Human Rights Act, 775 ILCS 5 et seq.

73. Defendant's conduct, as alleged herein, violated the Illinois Human Rights Act, 775 ILCS 5 et seq, which makes it unlawful to retaliate against an employee because he engaged in protected activity.

74. Plaintiff engaged in protected activity when he took the following actions, including but not limited to, reporting that the female employee was planning an attack on him.

75. Plaintiff had a reasonable belief that his report violated Illinois civil rights laws.

76. After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff because of that activity, as alleged in the statement of facts and herein, subjecting Plaintiff to retaliation for voicing his opinion, including but not limited to:

a. Termination;

b. All actions described in the allegations of this complaint or resulting therefrom;

77. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

78. Plaintiff was terminated in part because of his protected activity.

79. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, position, earning capacity, humiliation, mental anguish, and emotional distress.

80. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

81. Plaintiff requests the relief as described in the Prayer of Relief below.

## COUNT V
## COMMON LAW RETALIATORY DISCHARGE (ANTICIPATED WORKERS' COMPENSATION CLAIM)

46. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

47. At all relevant times, Plaintiff was employed by Defendant within the State of Illinois.

48. During his employment, Plaintiff sustained a work-related injury as he was attacked by a former employee of Defendant in its parking lot while he was leaving work early due to the threat of being attacked by the same former employee.

49. Defendant's supervisors and/or management were aware of his injuries because they both witnessed it and/or had/have a recording of the attack in which his finger was almost severed.

50. Plaintiff did indeed require medical treatment, including surgery, was not able to work, and pursued his rights under the Illinois Workers' Compensation Act, 820 ILCS 305/1 et seq.

51. Defendant was aware, or reasonably suspected, that Plaintiff intended to file a workers' compensation claim and/or exercise his rights under the Act.

52. Shortly thereafter, Defendant terminated Plaintiff's employment.

53. Plaintiff's discharge was not based on any legitimate, non-pretextual reason, but was in part in retaliation for its knowledge of his injuries and his anticipated exercise of rights under the Illinois Workers' Compensation Act.

54. Defendant's conduct violates the clearly mandated public policy of the State of Illinois, which protects employees from being terminated in retaliation for asserting or intending to assert rights under the Workers' Compensation Act.

55. As a direct and proximate result of Defendant's unlawful retaliatory discharge, Plaintiff has suffered lost wages and benefits, emotional distress, damage to reputation, and other compensable injuries.

## COUNT VI

## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

56. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

57. At all relevant times, Plaintiff was employed by Defendant within the State of Illinois.

58. Illinois law recognizes a narrow public policy exception to the doctrine of at-will employment, whereby an employer may be held liable for terminating an employee in contravention of a clearly mandated public policy.

59. Plaintiff engaged in conduct that is protected by well-established Illinois public policy, including but not limited to reporting a threat of physical harm to his supervisor Mike.

60. Defendant was aware of Plaintiff's protected conduct and/or complaints, because Mike was Defendant's agent and, upon information and belief, Mike informed Defendant's other agents, including its human resources department, of Plaintiff's complaint.

61. As a result of his report of the threat of harm, which Defendant did not take seriously and did nothing to prevent, Plaintiff was terminated the next day by the same.

62. Plaintiff was further terminated for being attacked and suffering injuries, as Defendant wanted to cover up what occurred and, upon information and belief, did not report the workplace violence matter to any authorities such as OSHA and/or the Department of Labor.

63. Plaintiff's discharge was causally connected to the fact that he was physically attacked at work after warning his supervisor Mike of the specific threat made against him, and for engaging in protected activity by reporting the threat as he had been trained to do, as Defendant wanted to get rid of him to cover up the situation and not deal with any other issues that may therefrom arise.

64. His termination was a violation of public policy and not based on any legitimate or lawful reason.

65. Defendant's conduct violates the clearly mandated public policy of the State of Illinois, including the public policy favoring workplace safety and the policy prohibiting retaliation against employees who report violations of law and/or workplace policies.

66. As a direct and proximate result of Defendant's unlawful discharge, Plaintiff has suffered damages including lost wages and benefits, emotional distress, and damage to reputation.

## RELIEF REQUESTED

PLAINTIFF, Yuri Smith, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: August 4, 2025

Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ *Carla D. Aikens*

Carla D. Aikens (6296269)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
*Attorneys for Plaintiff*